IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TOLEDO NEWSPAPER UNIONS
BLADE PENSIN PLAN AND TRUST FUND,
      Plaintiff,      Case No. 3:09 CV 2252
  -vs-
                 MEMORANDUM OPINION
NUTMEG INSURANCE CO.,

      Defendant.

KATZ, J.

This matter is now before the Court on the motion of the defendant, Nutmeg Insurance Company ("Nutmeg"), to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9). The plaintiff, Toledo Newspaper Unions-Blade Pension Plan and Trust Fund ("the Plan"), has filed a response (Doc. 10), and Nutmeg a reply (Doc. 12). The motion will be granted.

**I. Background**

On December 10, 2003, Nutmeg issued an Investment Management Consultants Errors and Omissions Insurance Policy to Investment Performance Services, LLC ("IPS"). During the coverage period, the Plan brought suit in this Court against IPS and related defendants, alleging mismanagement of the Plan's assets. See *Toledo Blade Newspaper Unions - Blade Pension Plan, et al. v. Investment Performance Services, LLC, et al.*, 373 F.Supp.2d 735 (N.D. Ohio 2005). As part of the settlement of that case, IPS assigned its claims against Nutmeg to the Plan. The Plan now brings this action as IPS's assignee, alleging that Nutmeg breached its contractual duty to indemnify IPS in the earlier action and pay its defense costs above the policy limit of $1 million.

**II. Standard of Review**

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." The court must accept as true all of the factual allegations contained

in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive dismissal, a complaint must contain enough factual material to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Nor is it enough for the complaint to state facts that are "merely consistent with a defendant's liability." *Iqbal*, 129 S.Ct. at 1949. Rather, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The term "plausible," as used in *Twombly* and *Iqbal*, is to be understood in a peculiarly narrow sense, and does not refer to the likelihood that the plaintiff will be able to prove a particular allegation. See *Iqbal*, 129 S.Ct. at 1951 ("To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical."); *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."). Rather, the Court meant the term to refer to the plausibility of the plaintiff's legal theories, when considered in light of the factual allegations in the complaint.

### III. Discussion

The Court must determine whether Nutmeg fulfilled its obligations under the E&O policy it issued to IPS. That policy is attached to the Complaint (Doc. 1; see also Doc. 10, Exh. 1), and thus the Court may properly consider it at this stage of the proceedings. See 2 J. Moore et al., Moore's Federal Practice § 12.34[2], p. 12-87 (3d ed. 2009).

An insurance policy is "a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 170 Ohio St. 336, 339 (1960).[1] Where the language of the policy's provisions is clear and unambiguous, the court must enforce the contract as written. *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). Moreover, "[j]ust because the policy does not define a term does not mean that the policy is ambiguous." *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St.3d 270, 273 (1999). Instead, a court must examine "the insurance contract as a whole," in order to ascertain the intent of the parties as reflected by the language they used in the contract. *Id*.

In this case, the policy states that "**CLAIM EXPENSES SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND SHALL BE SUBJECT TO THE DEDUCTIBLE.**" Doc. 10, Exh. 1 at TOL00001 (boldface and capitalization in original); see also *id* at TOL00004 ("The liability of [Nutmeg] hereunder, including costs and expenses incurred in the investigation and defense of any claim or suit, shall not exceed in the aggregate . . . the Limit of Liability stated in the Declarations."); *id* at TOL 00017 ("The Limit of Liability available to pay damages, judgments, and settlements shall be reduced and may be exhausted by amounts incurred as claims expenses"). Consistent with these provisions, Nutmeg promised to pay to IPS "[c]osts and expenses incurred in the defense of any claim for which coverage is provided

---

[1] The parties, in their briefs, profess uncertainty as to whether Ohio or Georgia law governs this dispute (IPS is headquartered in Georgia, while Nutmeg has its principal place of business in Connecticut). The Court finds that any distinction between the two sources of law does not make a difference in this case.

3

hereunder." *Id*. at at TOL00002. The policy provides that Nutmeg's "Limit of Liability" under the policy is "$1,000,000 PER CLAIM/AGGREGATE". *Id*. at TOL00001 (capitalization in original).

The Complaint concedes that "Nutmeg made payment for certain legal fees and 'expert' expenses during the continuing litigation, but only up to $1,000,000, after the deductible." Doc. 1 at ¶ 26. But the Plan insists that it is entitled to recovery in this action because Nutmeg refused to advance "additional funds" beyond the policy limit for "attorneys fees, 'expert' fees and the other expenses necessarily incurred in the defense." *Id*. at ¶ 27.

As noted above, the policy states repeatedly, in clear and unambiguous language, that costs and expenses incurred in the defense of a suit may reduce or exhaust the policy limits. When the policy is examined as a whole, these repeated warnings eliminate any potential ambiguity as to whether Nutmeg was obligated to provide coverage above the $1 million policy limit in defense of the action against IPS. The language of the policy makes clear that it affords no coverage above the $1 million limit for expenses incurred in defense of the insured.

The Plan has advanced no reasonable competing interpretation of the policy language that would allow it to recover for IPS's litigation expenses above the policy limit. The fact that the policy does not specially define "claims expenses" to include "litigation fees" does not create any ambiguity. It would be unreasonable for the Court to read the phrase "costs and expenses incurred in the . . . defense of any claim or suit" to somehow exclude "litigation fees."

The Plan's argument that Nutmeg breached its fiduciary duties to IPS fares no better. Under Ohio law, an insurer does not violate its fiduciary duties unless it "fails to perform under the contract or unreasonably refuses to act in a prompt manner in performing its contractual duties." *Red Head Brass, Inc. v. Buckeye Union Ins. Co.*, 135 Ohio App.3d 616, 632 (9th Dist.

1999). Because Nutmeg had no obligation under the policy to defend IPS beyond the $1 million policy limit, it did not violate its fiduciary duties to IPS.[2]

**IV. Conclusion**

For the foregoing reasons, Nutmeg's motion to dismiss (Doc. 9) is granted, and the case is closed.

`IT IS SO ORDERED.

                                           s/ *David A. Katz*
                                           DAVID A. KATZ
                                           U. S. DISTRICT JUDGE

---

[2] Under Georgia law, "[g]enerally, no fiduciary relationship exists between an insured and his or her insurer." *Monroe v. Bd. of Regents of the Univ. Systems of Georgia*, 268 Ga. App. 659, 662 (2004). This rule is subject to exceptions that do not apply in this case. *Id*.